UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN C. ARGENTO, individually and
d/b/a S.C. FINE ARTS,

                          Plaintiff,

                                                        Case # 16-CV-6172-FPG-MWP

v.

                                                        DECISION AND ORDER

MARILYN SANTIAGO, FOR THE LOVE
OF RAMÓN LLC, ALL THAT JAZZ,
ROCHESTER, LLC, ACT TWO HOME
STAGING, and JOHN DOES 1 to 10.

                          Defendants.
_____

## INTRODUCTION

On March 17, 2016, Plaintiff Steven Argento brought this copyright and trademark infringement suit against his Aunt Marilyn Santiago. ECF No. 1. On June 24, 2016, Plaintiff amended his Complaint to add Defendant All That Jazz (hereinafter "Defendant"). ECF No. 7. Specifically, Plaintiff accuses Defendant of unlawfully distributing Plaintiff's copyrighted work in violation of 17 U.S.C. § 106(3), and knowingly selling merchandise bearing a false or counterfeit trade-mark in violation of Section 33.09 of the New York Arts and Cultural Affairs Law ("ACAL"). *Id.* Following a November 2018, 2016 mediation session, Plaintiff settled with Marilyn Santiago, but he maintains his suit against Defendant All That Jazz.

On August 9, 2017, Defendant moved for summary judgment. ECF No. 41. Although Plaintiff's Response was due by October 19, 2017, he has not responded to Defendant's Motion or requested an extension. For the reasons stated below, a ruling on Defendant's Motion is DEFERRED with respect to Plaintiff's copyright infringement claim, and Defendant's Motion is GRANTED with respect to Plaintiff's ACAL claim.

1

# DISCUSSION

## I. Summary Judgment Standard

A motion for summary judgment should be granted where the moving party shows that "there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding such a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Thus, when presented with a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The burden of establishing that no genuine and material factual dispute exists is on the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To that end, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003). That said, if the non-moving party fails to respond to their opponent's motion for summary judgment, "the court may consider as undisputed the facts set forth in the moving party's affidavits." *Gittens v. Garlocks Sealing Technologies*, 19 F. Supp. 2d 104, 109 (W.D.N.Y. 1998). Once the Court is satisfied that the moving party's assertions are supported by citations to evidence in the record, and those assertions show that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## II. The Material Facts are Undisputed

Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes

of the motion." The same rule is contained in Local Rule of Civil Procedure 56(a)(2), which provides that:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

Because Plaintiff failed to file a response to Defendant's statement of material facts, this Court considers the facts alleged by Defendant—which are supported by citations to evidence in admissible form—to be undisputed, in accordance with these rules. See *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998). Accordingly, this Court adopts the Defendant's Statement of Material Facts as to Which There is No Genuine Issue. ECF No. 41-3. Those undisputed facts are summarized below.

### A. Plaintiff's Primary Dispute with Marilyn Santiago

Renowned Rochester-based artist Ramón Santiago died on December 18, 2001, naming his widow, Marilyn Santiago, as the sole beneficiary of his estate. ECF No. 41-3 at 1. Accordingly, all intellectual property interests in his art passed to Ms. Santiago. *Id.* In 2002, Ms. Santiago and Plaintiff, her nephew, entered into an agreement by which Plaintiff was to market and sell Ramón Santiago's artwork and share 40% of the sale proceeds with Ms. Santiago. *Id.* The agreement gave Plaintiff the exclusive right to use the name Ramón Santiago but in no way transferred any intellectual property rights to Plaintiff. *Id.*

After execution of the agreement, Plaintiff started affixing an estate seal to prints of Ramón Santiago's art. ECF No. 41 at 8. The seal contained the words "Estate of Ramón Santiago" and a

stylized "R" or "3" design that Ramón Santiago often drew on his artwork while he was still alive. ECF No. 41-3 at 2. From as early as 1993, Ramón had used the stylized "R" as a signature and as a design element in numerous drawings and paintings. *Id.*

Trouble first began in July of 2012, when Marilyn Santiago had a dispute with Plaintiff and canceled her marketing agreement with him. *Id.* at 3. The cancelation letter from Marilyn Santiago's lawyer directed Plaintiff to "cease and desist from holding [him]self out as a representative of the business," to "discontinue sales on behalf of" Marilyn Santiago, and to "immediately remove any and all references to" the name Ramón Santiago from his business literature or advertising materials. ECF No. 41 at 139. Her relationship with Plaintiff worsened in 2015, when she began selling her husband's art on eBay using the "Ramón Santiago" name and the estate seal that Plaintiff had designed. Plaintiff sent Ms. Santiago a cease-and-desist letter alleging that she was violating Plaintiff's contractual and intellectual property rights, as the estate seal "includes a distinctive and copyrightable design and is also a design trademark." ECF No. 41 at 81. Ms. Santiago continued to sell her husband's art bearing the estate seal, so Plaintiff sued her under intellectual property and contractual law.

**B.      Plaintiff's Secondary Dispute with Defendant All That Jazz**

In 2013, Ms. Santiago visited Defendant, an antiques and collectibles cooperative, to inquire about selling some of her belongings, including prints of some of her late husband's paintings. ECF No. 41 at 3. Recognizing Ms. Santiago as Ramón Santiago's widow, Defendant's co-owner Marie Zenkel purchased several prints, some of which had been signed by Ramón and others which bore the disputed estate seal. ECF No. 41-3 at 2. Defendant sold the prints bearing the seal for prices between $68 and $140. ECF No. 41 at 3.

In February 2016, Plaintiff registered the stylized "R" as a copyright, falsely stating on his copyright application that he was the author of the "R" and not his Uncle Ramón Santiago, the

4

individual who had in fact created the "R." ECF No. 41-3 at 2. Plaintiff also falsely stated in his application that he had created the "R" in 2002, when Ramón Santiago had actually created it around 1993. *Id.* In the late spring of 2016, Plaintiff sent Defendant a letter threatening a lawsuit for copyright violation. *Id.* Defendant had not known that the estate seal was the subject of an intellectual property dispute between Plaintiff and Marilyn Santiago. However, upon receiving the letter, Defendant withdrew from sale all of the Ramón Santiago prints that bore the raised seal. *Id.* Nonetheless, Plaintiff sued Defendant under federal and state intellectual property law.

### C. Mediation

Plaintiff and Marilyn Santiago eventually settled through mediation "with no damages paid over," ECF No. 41-4 at 1, and with both parties authorized to use the estate seal. *Id.* at 10. Defendant was "effectively left out of the mediation process which resolved the main action" and is still facing Plaintiff's suit. *Id.* at 1.

## III. Analysis

### A. Plaintiff's Copyright Claim

Plaintiff accuses Defendant of violating the Copyright Act by distributing prints bearing his copyrighted stylized "R" without authorization. While the Act confers on copyright owners the exclusive right to distribute their copyrighted works, *see* 17 U.S.C. § 106(3), that right applies only to valid copyright owners. A "certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a copyright, 17 U.S.C. § 410(c), though that presumption may be rebutted."[1] *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759 (2d Cir. 1991). Defendant rebuts the presumptive validity of Plaintiff's registered copyright by arguing that Ramón Santiago's estate, and not Plaintiff, owns the copyright for the stylized "R."

---

[1] In addition to establishing prima facie validity, registering a copyright is also a necessary prerequisite to bringing an infringement suit. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

"Copyright ownership vests initially in the author of a work." *Richard J. Zitz, Inc. v. Pereira*, No. 99-9399, 2000 U.S. App. LEXIS 22418 (2d Cir. Aug. 31, 2000) (citing 17 U.S.C. § 201(a)). The "author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.* (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Even if the author never registers his copyright, the copyright "automatically inheres in a work the moment it is created." *Family Dollar Stores, Inc. v. United Fabrics Int'l*, *Inc.*, 896 F. Supp. 2d 223, 229 (SDNY) (quoting *Nimmer on Copyright* § 7.16[A][1]). Because Ramón Santiago actually created the stylized "R," incorporating it into "the signature and titling of certain prints" and even "into the design of the work itself in one instance," Defendant believes that Ramón was the author of the copyright and thus its true owner. ECF No. 41-4 at 3-4. Upon Ramón's death, his copyright passed to his sole heir, Marilyn Santiago, and at no point did she relinquish that copyright to Plaintiff. *Id.* at 4.

Because "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute [sic] reason for holding the registration invalid and thus incapable of supporting an infringement action," Defendant believes the Court has reason to invalidate Plaintiff's copyright registration. ECF No. 41-1 at 4 (quoting *Russ Berrie & Co. v. Jerry Elsner Co.,* 482 F. Supp. 980, 988 (S.D.N.Y. 1980). Given Plaintiff's "familiarity with the artist [Santiago] and [his] work," Defendant argues that Plaintiff "must have known that [Ramón] Santiago created the device." *Id.* According to Defendant, that Plaintiff "did nothing more than copy [the stylized "R"] from work created and signed by the artist [Santiago]" irrefutably proves that Plaintiff knew Ramón Santiago was the true author of the stylized "R." *Id.* Despite this knowledge, Plaintiff falsely listed himself as the author of the "R" on his copyright registration application, *see* ECF No. 41 at 143. He also claimed to create the "R" in 2002, *see id.* at 143, even though Ramón Santiago had drawn the "R" on a painting in 1993. *See id* at 144-45. Defendant

6

believes that, had the Copyright Office known that Ramón Santiago was the true author and owner of the "R," the Copyright Office would not have granted Plaintiff's registration application. Consequently, Plaintiff would not have been able to bring an infringement suit against Defendant. *See Reed Elsevier, Inc.* 559 U.S. at 154 ("The Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement.").

Under 17 U.S.C. § 411(b), the Court must determine two things before invalidating a copyright registration: first, whether "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate," and second, whether "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). The Court may answer the first question on its own,[2] but must solicit the advice of the Register of Copyrights before resolving the latter question. *Id.* at § 411(b)(2) ("the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.").[3]

To answer the first question, the Court concludes that Plaintiff included inaccurate information concerning the authorship of the stylized "R" on his copyright application with the knowledge that it was inaccurate. Indeed, as Defendant argues, that is the only logical conclusion to draw from the facts: Plaintiff at one point was in charge of marketing and selling all of Ramón Santiago's paintings, so he surely noticed the stylized "R" on several of those paintings. It defies reason to assume that Plaintiff coincidentally drew that same "R" without copying Ramón

---

[2] *DeliverMed Holdings*, *LLC v. Schaltenbrand*, 734 F.3d 616, 624 (7th Cir. 2013) ("[C]ourts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality.").

[3] Even though neither party has asked the Court to refer the question to the Register of Copyrights, the Court is still required to refer the question. *See Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) ("[T]he district court's invalidation of a copyright registration without complying with the procedure set forth in § 411(b)(2) was reversible error, even though the parties had not asked the district court to consult the Copyright Office." (citing *DeliverMed Holdings,* 734 F.3d at 624)).

Santiago's. As Ramón Santiago had actually created the "R" and had been using it since at least 1993, Plaintiff surely knew that listing himself as the author of the "R" and the creation date as 2002 on the copyright registration application were inaccurate representations. Plaintiff has not rebutted Defendant's version of the facts, and in any event, the Court cannot devise any alternative explanation that Plaintiff could give.

The Court refers to the Register of Copyrights the question of whether the Register would have refused registration had it known that Plaintiff was not the author of the "R." Therefore, the Court will submit the following inquiry to the Register of Copyrights in a separate order:

> Would the Register of Copyrights have rejected Plaintiff's Registration No. VA 1-990-174 for graphic art ("Santiago Family Crest," filed February 16, 2016) had it known that Plaintiff had falsely claimed to be the work's author on his copyright registration application, when in fact another individually had created the work roughly a decade before the creation date listed on Plaintiff's application?

For the reasons stated above, a final ruling on the Motion for Summary Judgement on the 17 U.S.C. § 106(3) claim is DEFERRED pending the receipt of the response by the Register of Copyrights.

**IV.     Plaintiff's New York Arts and Cultural Affair Law Claim**

In addition to his copyright infringement claim, Plaintiff asserts a claim under ACAL § 33.09, which forbids "*knowingly* sell[ing] . . . an article of merchandise to which is affixed a false or counterfeit trade-mark, or the genuine trade-mark, or an imitation of the trade-mark of another, without the latter's consent." N.Y. Arts & Cult. Aff. Law § 33.09 (McKinney 2017) (emphasis added). According to Plaintiff, Defendant deceived the public "by presenting the impression to consumers that Defendant Marilyn Santiago's counterfeit products and services are associated with or sponsored by Plaintiff." ECF No. 7 at 24. Plaintiff claims common law trademark rights in the estate seal, and, although the Complaint is not clear, he apparently believes that the estate seals

Marilyn affixed to the prints she sold to Defendant were "counterfeit." *See* ECF No. 7 at 28 ("Through . . . the counterfeit use of the Copyright, and the Design Mark . . . Defendants have violated the New York Arts and Cultural Affairs Law.").

This claim fails because Defendant did not possess the "knowing" scienter required by ACAL. The record establishes that Defendant had no knowledge that the estate seal was the subject of any trademark dispute. Defendant's co-owner Marie Zenkel swore in her affidavit[4] that she only learned of the dispute upon receiving a letter from Plaintiff's attorney, after which she ceased selling the prints bearing the estate seal. Plaintiff has not rebutted Ms. Zenkel's statement, so the Court considers it undisputed.

Even if Defendant had the requisite scienter, Plaintiff's claim to a common law trademark in the estate seal is dubious. In order to claim "ownership of a mark, a party must demonstrate that his use of the mark has been of such a quality and for such a duration that it has come to identify goods bearing it as originating from that party." *D.C. Comics, Inc. v. Powers*, 465 F. Supp. 843, 846 (S.D.N.Y. 1978). The mark "must have developed a secondary meaning—the primary significance of the mark in the hands of the consuming public is not to identify the product, but rather, to identify its producer." *Id.* Similarly, Section 33.01 of ACAL defines "trade-mark" as a mark used to indicate "the maker, owner or seller of an article of merchandise." N.Y. Arts & Cult. Aff. Law § 33.01 (McKinney 2017).

In this case, the allegedly trademarked seal reads "Estate of Ramón Santiago." Those words suggest to the public that a print or painting bearing them came from the artist's estate, which belonged entirely to Marilyn Santiago, and not to Plaintiff. Plaintiff has therefore failed to establish that the seal has developed a "secondary meaning" identifying him as the source of the goods bearing the estate seal.

---

[4] ECF No. 41 at 3-5.

More fundamentally, Plaintiff has no right to claim a trademark in the words "Estate of Ramón Santiago." While the 2002 agreement between Plaintiff and Marilyn Santiago gave Plaintiff the right to act as a marketing agent for Marilyn, she unequivocally canceled that agreement in July of 2012. By the time Marilyn sold the stamped prints to Defendant in 2013, Plaintiff had no right whatsoever to hold himself out as a representative of Ramón Santiago's estate. Yet by selling prints stamped with "Estate of Ramón Santiago," Plaintiff did just that. Consequently, Plaintiff's trademark rights in the seal are illusory, as is his claim that Defendant violated those rights by selling art that it purchased from the estate's only authorized representative, Marilyn Santiago. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's ACAL claim is GRANTED.

## V. Attorneys' Fees

The Defendant has asked the Court to award it attorneys' fees because the action against Defendant "was brought in bad faith." ECF No. 41-4 at 11. The Supreme Court and the Second Circuit "have cautioned that the inherent power to impose sanctions should be applied with 'restraint and discretion.'" *ED Capital, LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 81 (S.D.N.Y. 2016) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). Under Second Circuit law, the Court must "find clear evidence that the losing party's claims were 'entirely without color *and* made for reasons of harassment or delay or for other improper purposes" before awarding attorneys' fees. *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985) (quoting *Browning Debenture Holders Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977) (emphasis added). There is no exact definition of "improper purpose," but "it may be evidenced by conduct occurring either before or during trial." *Id.* The Court cannot simply infer from a party's colorless claims that the party acted with an "improper purpose," because "[s]uch a simple equation would turn the two-part standard into a one-part standard." *Id.* at 391.

Because the Court is awaiting a decision from the Copyright Office on the copyright infringement claim, the Court cannot issue a finding on whether Plaintiff's claims are "entirely without color." In any event, there is no clear evidence that Plaintiff's claims were made for reasons of harassment or other improper purposes, or that he exhibited any bad conduct during the course of this litigation. The bar for establishing bad faith is exceptionally high, and Defendant has not met that bar. Accordingly, the request for attorneys' fees is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 41) is GRANTED with respect to Plaintiff's New York Arts & Cultural Affairs Law claim. A ruling on Defendant's Motion is DEFERRED with respect to Plaintiff's copyright infringement claim, pending advisement from the Register of Copyrights. Finally, Defendant's request for attorneys' fees is DENIED.

IT IS SO ORDERED.

Dated: December 18, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court